UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| **Annette H. Ardis,** | ) | Civil Action No.: 3:25-cv-13183-MGL |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| **TransUnion, LLC,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Annette H. Ardis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Columbia Division because the Plaintiff resides in Lee County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Annette H. Ardis, is a resident and citizen of the State of South Carolina, Lee County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff

to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15.     In 2019, Plaintiff first became the victim of identity theft and had accounts opened in her name without her knowledge or permission.

16.     In 2020, Plaintiff filed a police report, filed an identity theft affidavit with the Federal Trade Commission, and placed a fraud alert on all of her credit reports.

17.     On or about March 30, 2020, Defendant sent Plaintiff a postcard confirming a fraud alert had been placed on her TransUnion credit reports.

18.     In 2024, Plaintiff began receiving debt collection letters in the mail for credit card accounts that did not belong to her.  This was extremely frightening and stressful to Plaintiff because she does not have or use credit cards.  In fact, Plaintiff is and always has been adamant about only using cash or checks as forms of payment.

19.     Unnerved that she may have again been the victim of identity theft, Plaintiff decided to obtain copies of her credit reports.  Unfortunately, when Plaintiff tried to obtain a copy of her TransUnion credit report, she could not answer the identity verification questions because the questions contained information known only to the identity thief.

20.     Subsequently, Plaintiff learned that the identity thief was living at 427 New Castle Road, Greenville, South Carolina.  Plaintiff also learned the thief paid her electricity bill with one of the fraudulent credit cards opened in Plaintiff's name.

21.     On February 7, 2025, Plaintiff filed a police report with the Lee County Sheriff's Office.

22.     That same day, Plaintiff filed an Identity Theft Report with the Federal Trade

4

Commission wherein Plaintiff provided the address used by the identity thief to open fraudulent accounts. Plaintiff also provided the police officer's name and report number regarding Plaintiff's report.

23. On or about February 7, 2025, Plaintiff also called the credit reporting agencies to request copies of her credit reports.

24. On or about February 25, 2025, Defendant sent Plaintiff a letter stating it was unable to locate a credit report for Plaintiff based on the information she provided. Plaintiff was asked to provide copies of two documents to verify her current address, Social Security number, and date of birth.

25. Plaintiff immediately forwarded Defendant a copy of her driver's license and her Social Security benefits statement.

26. On or about March 16, 2025, Defendant sent Plaintiff a second letter requesting proof of her current mailing address.

27. On or about March 24, 2025, Plaintiff mailed Defendant a completed Alert Request Form along with a copy of her driver's license and Verizon telephone bill.

28. On or about March 29, 2025, Defendant sent Plaintiff a postcard informing her a fraud alert had been added to her TransUnion credit report.

29. On April 2, 2025, Defendant received Plaintiff's Alert Request Form and proof of identity and address, but never provided Plaintiff with a copy of her TransUnion credit report.

30. Frustrated that Defendant continued to refuse to provide her with a copy of her TransUnion credit report, on or about June 13, 2025, Plaintiff sent a dispute letter to

5

Defendant. In this letter, Plaintiff specifically informed Defendant that she had never received a copy of her TransUnion credit report even after mailing Defendant proof of her identity. Plaintiff informed Defendant she had been the victim of identity theft and fraud, and requested Defendant remove numerous inaccurate and fraudulent items appearing on her credit report. Specifically, Plaintiff listed Merrick Bank, Acct. No. *3850, National Credit Adjusters, Acct. No. *2649, LVNV Funding LLC, Acct No. *0842, JPMCB Card Services, Acct No. *2986, Quick Credit, Acct No., *2649, and Capital One Bank USA NA, Acct. No., *4159 as fraudulent accounts opened in her name without her knowledge or permission. Plaintiff also asked Defendant to remove of all inquiries by Capital One, Miscellaneous, MDG USA, Inc., Leadsmarket.com LLC, Summit Management Company, LLC, Capital One Auto Finance, and Finance as she didn't have any accounts with those creditors. Plaintiff also requested Defendant delete a hard inquiry made on June 12, 2024, for Bank/Unknown as she did not apply for credit with any bank other than Synovus. Finally, Plaintiff stated she had never lived at the New Castle Road address in Greenwood, South Carolina, and it needed to be removed from her credit report. Plaintiff provided Defendant her address, Social Security number, date of birth, and a copy of her driver's license. Additionally, Plaintiff requested Defendant send her a complete copy of her credit report.

31. Defendant received Plaintiff's dispute on June 18, 2025.

32. On or about June 18, 2025, Defendant sent Plaintiff a letter regarding Remedying the Effects of Identity Thef and setting out some of her rights under the Fair Credit Report Act.

6

33. On or about July 9, 2025, Defendant sent Plaintiff its Investigation Results wherein Defendant informed Plaintiff the National Credit Adjusters and Quick Credit accounts were deleted from Plaintiff's credit report. The JPMCB Card Services account was verified as accurate, and thus continued to report on Plaintiff's credit report. The LVNV Funding LLC, and Merrick Bank accounts were verified as accurate and updated, and thus, both remained on Plaintiff's credit report. Defendant also informed Plaintiff that the address section of Plaintiff's credit report was updated to her current address, but did not inform Plaintiff whether the fraudulent address had actually been removed.

34. On or about July 9, 2025, five months after Plaintiff first requested it, Defendant finally provided Plaintiff with a copy of her TransUnion credit report. Upon review, Plaintiff was devastated to learn her credit report contained numerous fraudulent accounts, as well as fraudulent inquiries.

35. On or about July 31, 2025, Plaintiff sent a second dispute letter to Defendant. In her letter, Plaintiff stated she had received Defendant's Investigation Results, but that Defendant was still reporting numerous pieces of information that were false, fraudulent, and/or misleading. Plaintiff again specifically disputed the JPMCB Card Services, LVNV Funding, LLC, and Merrick Bank accounts as fraudulent accounts opened in her name without her knowledge. Plaintiff also disputed Finl Accounts Svcs Team, Acct. No, 24104**, a collection account for Northland Communication, as fraudulent as she never had service with Northland Communication. Additionally, Plaintiff disputed inquiries by FEBDestiny, Capital One, Merrick Bank, and OneMain Financial. With her dispute, Plaintiff provided Defendant a copy of the police report she filed regarding the theft of her

identity and another copy of her driver's license.

36.     Defendant received Plaintiff's second dispute on August 5, 2025.

37.     On or about August 6, 2025, in response to Plaintiff's dispute and police report, Defendant sent Plaintiff correspondence admitting it had received Plaintiff's request to block the Finl Accounts Svcs Team, LVNV Funding LLC, JPMCB Card Services, and Merrick Bank accounts due to fraud.  However, because Defendant determined that the block request was made in error, was a misrepresentation of material fact relevant to the request to block and/or Plaintiff had obtained possession of goods, services, or money as a result of the transaction, it refused to block the accounts.

38.     On or about August 28, 2025, Defendant sent Plaintiff its Investigation Results showing that the inquiries for Capital One and FebDestiny had been deleted from Plaintiff's credit report.  Unfortunately, the Investigation Results also informed Plaintiff that the Finl Accounts Svcs Team, JPMCB Card Services, LVNV Funding LLC, and Merrick Bank accounts were each verified as accurate and updated.  Accordingly, Defendant continued reporting all of the fraudulent accounts as belonging to Plaintiff on her credit report.

39.     On or about September 9, 2025, Plaintiff sent Defendant a third dispute letter stating she had received Defendant's Investigation Results and Defendant's letter wherein Defendant refused to block the reporting of the fraudulent accounts.  Plaintiff again requested that Defendant remove the Final Accounts Svcs Team; JPMCB Card Services; LVNV Funding LLC; and Merrick Bank accounts as they were all fraudulent.  Plaintiff also requested that Defendant remove the Merrick Bank and OneMain Financial inquiries as she did not have any accounts with them.  With her dispute, Plaintiff enclosed another

copy of the police report she had filed and her driver's license.

40. Defendant received Plaintiff's third dispute on September 15, 2025.

41. On or about September 17, 2025, Defendant sent Plaintiff correspondence stating it had received Plaintiff's second fraud block request for Finl Accounts Svcs Team, LVNV Funding LLC, JPMCB Card Services, and Merrick. Despite receipt of Plaintiff's valid police report, Defendant again refused to block the fraudulent information from Plaintiff's credit report.

42. On or about October 10, 2025, Defendant sent Plaintiff Investigation Results showing that both the Finl Accounts Svcs Team and JPMCB Card Services accounts were verified as accurate. The LVNV Funding LLC and Merrick Bank accounts were verified as accurate and updated. Accordingly, despite repeated receipt of Plaintiff's police report, Defendant continued reporting all of the fraudulent accounts as belonging to Plaintiff on her credit report.

43. Defendant failed to make a reasonable investigation into Plaintiff's multiple disputes.

44. Defendant wrongfully refused to provide Plaintiff a copy of her credit report.

45. To date, Defendant continues to report false and fraudulent information on Plaintiff's credit report.

46. Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

47. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers'

information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

48. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

49. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

50. The Plaintiff adopts the averments and allegations of paragraphs 15 through 49 hereinbefore as if fully set forth herein.

51. Defendant maintains and distributes credit data files on the Plaintiff's credit.

Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

52.  Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

53.  As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, severe and unrelenting anxiety, worry, inability to focus, constant racing thoughts, the feeling of loss of control of her life, fear, loss of sleep, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

54.  In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

55.  Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

56. The Plaintiff adopts the averments and allegations of paragraphs 15 through 55 hereinbefore as if fully set forth herein.

57. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

58. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

59. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

60. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, severe and unrelenting anxiety, worry, inability to focus, constant racing thoughts, the feeling of loss of control of her life, fear, loss of sleep, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is

entitled to actual damages in an amount to be determined by the jury.

61. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

62. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

63. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

　　　　　　　　　　　　　　　　　　*/s/ Penny Hays Cauley*
　　　　　　　　　　　　　　　　　　Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492